IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-00208-NYW-CYC

MICHAEL DEVLOO, P.E.,

     Plaintiff,

v.

ARCHULETA COUNTY,
HAYLEIGH BROWN,
JACOB KOEHLER,
DYLAINA GAUVEY,
DONNA GRAY,
KRISTEN MCCOY,
ROBERT HILL,
ROXANNE LATTIN,
DARCY DOWNING, and
JOHN AND JANE DOES 1-9,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Cyrus Y. Chung, United States Magistrate Judge.**

Defendant Hayleigh Brown, an Archuleta County sheriff's deputy, arrested plaintiff Michael Devloo, P.E. on charges of child abuse and harassment. The prosecution later dismissed the charges. On the plaintiff's view, this means that Brown and others engaged in unlawful conduct. But the Constitution "does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Indeed, the law affords qualified immunity to public officials unless they violate clearly established rights. The plaintiff's complaint alleges no facts showing such a violation. Accordingly, the Court **RECOMMENDS** that the defendants' motion to dismiss, ECF No. 20, be **GRANTED** and that the plaintiff's federal claims be dismissed with prejudice.

## BACKGROUND

According to the complaint, whose factual allegations the Court accepts as true for purposes of this motion, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on April 23, 2025, Brown responded to a report of potential abuse of the plaintiff's daughter. *See* ECF No. 5 ¶¶ 18–21. Brown went to the daughter's preschool, did not observe bruising on her, but nevertheless conveyed to school staff that she was engaged in a criminal investigation. *Id.* ¶¶ 23–25.

Later that day, Brown returned to the preschool, accompanied by defendants Dylaina Gauvey, a fellow sheriff's deputy, and Darcy Downing, a Colorado Department of Human Services ("DHS") caseworker. *Id.* ¶ 26. The defendants attached Brown's body-worn camera footage of this visit to their motion response. ECF No. 26. "Typically, when deciding motions to dismiss, the district court cannot look beyond the four corners of the complaint." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (citing *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024)). But "courts may consider 'documents that a plaintiff (1) attaches to [his] complaint; (2) incorporates by reference in [his] complaint; or (3) refers to in [his] complaint and that are central to [his] complaint and indisputably authentic.'" *Id.* (quoting *Cuervo*, 112 F.4th at 1312). The plaintiff appended an "Exhibit Index" to his complaint. "Exhibit 4" therein is the footage in question, ECF No. 5 at 11, which the plaintiff explicitly "incorporate[s] by reference" into his complaint. *Id.* at 13. As such, the video is properly part of the record on this motion.

Before entering the preschool, Brown told Downing that she had received a report that a citizen had observed the plaintiff in his vehicle hitting something aggressively, pulling over, exiting, and then continuing the hitting from outside the vehicle toward the vehicle's side. ECF No. 26, Ex. A. at 1:30–2:21. The citizen also saw a car seat and inferred the involvement of a child. *Id.* at 2:21-2:33. After Brown updated Downing, they entered the preschool and conducted

2

a forensic interview with the plaintiff's daughter. *Id.* at 10:47–26:10. Brown asked the daughter about a "bump" on her face; she denied that it hurt or that she knew about its origin. *Id.* at 13:58–14:33. The daughter related that the plaintiff had spanked her earlier because she was crying about putting on her boots. *Id.* at 18:10–18:55. Further questioning about the "bump" elicited a statement that it occurred in the car, but brought no clear explanation as to its cause. *See id.* at 19:40–21:24. Brown took a picture of the "bump." *Id.* at 21:55–22:03.

After the interview, Downing, Brown, and Gauvey spoke with an assistant preschool teacher, who had earlier noticed bruising on the daughter's face and asked if her face hurt. *Id.* at 27:16–27:22. She received an affirmative response and asked, "What happened? Did you fall?" *Id.* at 27:22–27:27. The daughter replied, "No, Daddy hit me 'cause he didn't like what I was doing." *Id.* at 27:27–27:30. Downing questioned the teacher more generally about the welfare of the plaintiff's children, and the teacher expressed some concerns beyond the events of the day. *See id.* at 28:08–33:30. At the end of the visit, Brown asked a different preschool staff member to "monitor it throughout the day and see if it gets darker," referring to the bump on the daughter's face, and to report if there was any other unusual activity. *See id.* at 41:30–41:57.

Some time after that, the plaintiff was arrested and detained for seven hours. ECF No. 5 ¶¶ 30, 33. Defendant Donna Gray, another sheriff's deputy, did not allow the plaintiff a phone call until five hours into his detention. *Id.* ¶¶ 35–36. Ultimately, the criminal case against the defendant was dismissed based on, among other things, a DHS report finding no evidence of abuse. *Id.* ¶¶ 48–49. During the criminal case, the plaintiff discovered apparent discrepancies between audit logs of body-worn camera footage and the actual footage that he received in discovery. *See id.* ¶¶ 41–47.

On December 19, 2025, the plaintiff commenced this action pro se in state court. *See id.* at 1. His complaint asserts five claims under 42 U.S.C. § 1983: (1) unlawful seizure and false arrest in violation of the Fourth Amendment, ECF No. 5 ¶¶ 54–60; (2) alteration of evidence in violation of the Fourteenth Amendment, *id.* ¶¶ 58–66; (3) procedural due process violations in violation of the Fourteenth Amendment, *id.* ¶¶ 67–73; (4) unconstitutional conditions of confinement in violation of the Fourteenth Amendment, *id.* ¶¶ 74–80; and (5) failure to train and supervise asserted against Archuleta County, *id.* ¶¶ 81-87. He also asserts various state-law claims. *Id.* ¶¶ 88–92. The defendants timely removed the action to this Court. ECF No. 1.

This motion followed, ECF No. 20, and the district judge referred it to the undersigned. ECF No. 21.

## ANALYSIS

The defendants move to dismiss the plaintiff's complaint, contending that it fails to state a claim and that the individual defendants sued are entitled to qualified immunity.

The standard for their former argument is oft-repeated and well known. A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not entitled to the assumption of

4

truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678. The ultimate duty of a reviewing court is to

"determine whether the complaint sufficiently alleges facts supporting all the elements necessary

to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v.

Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The standard regarding the defendants' latter argument requires more from a plaintiff.

Under the qualified-immunity doctrine, "government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, "the onus is

on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and

(2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*,

52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted).

To pass scrutiny under the first prong on a Rule 12(b)(6) motion, "the plaintiff 'must

allege facts sufficient to show (assuming they are true) that the defendants plausibly violated

their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017)

(quoting *Robbins*, 519 F.3d at 1249). The second prong does not require "a case directly on

point, but existing precedent must have placed the statutory or constitutional question beyond

debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "A clearly established right is one that is

sufficiently clear that every reasonable official would have understood that what he is doing

violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotation marks

omitted). "To make this determination," a court "consider[s] either if courts have previously

5

ruled that *materially similar conduct* was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with *obvious clarity* to *the specific conduct* at issue." *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1229 (10th Cir. 2025) (quotation marks omitted). "Usually, this requires either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Est. of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016) (quotation marks omitted). Courts may address the prongs in any order, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a plaintiff's failure "to establish either prong of the two-pronged qualified-immunity standard" means "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citations omitted).

Here, the plaintiff's federal claims arise under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of" law, "subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." The plaintiff invokes the Fourth and Fourteenth Amendments, as described below.

## I.    Unlawful Seizure and False Arrest (Count I)

Count I asserts a false-arrest claim under the Fourth Amendment, which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. "In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy

6

information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quotation marks omitted). "As to whether the law was clearly established at the time of the alleged violation, . . . a section 1983 plaintiff" must "show that 'it would have been clear to a reasonable officer that probable cause was lacking under the circumstances . . . .'" *Kaufman*, 697 F.3d at 1300 (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011)). A court therefore inquires "whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity." *Id.* (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc)). Such arguable probable cause existed here.

The arrest affidavit, which the plaintiff attached to his complaint, accused him of violating the Colorado child-abuse statute, *see* ECF No. 5 at 20–21, which provides that "[a] person commits child abuse if such person causes an injury to a child's life or health." Colo. Rev. Stat. § 18-6-401(1)(a). Here, Brown observed a bump on the daughter's face; received a report that a citizen had witnessed the plaintiff hitting something aggressively in a car with a car seat; interviewed the daughter, who confirmed that the mark had happened in the car but could not pinpoint its cause; and received a report from a teacher indicating that the daughter had attributed the mark to the plaintiff hitting her. No more was necessary for arguable probable cause.

The plaintiff cites no case law to the contrary. In the only case he cites, *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998); *see* ECF No. 29 at 5, "the arresting officer arrived on the scene after the alleged crime occurred and relied solely on accusations made by a party whose reliability had been called into doubt or would have been called into doubt if the officer had done any investigation, such as by interviewing the suspect." *Montgomery v. Cohn*, No. 23-1101, 2024 WL 1739290, at *3 (10th Cir. Apr. 23, 2024). Brown relied on no such flimsy

7

foundation: she interviewed the plaintiff, ECF No. 5 ¶ 19, the daughter, and a teacher who had heard from the daughter. A court must construe a pro se plaintiff's pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). But a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). *Baptiste* cannot be construed to compel a conclusion that Brown's evidence was short of arguable probable cause.

Nevertheless, the plaintiff says, he alleged a lack of injury to his daughter and, thus, this case cannot be resolved on a motion to dismiss regardless of the video. *See* ECF No. 29 at 5–6. That is not the law. "[A]lthough" a court "accept[s] all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). Here, the video, which the plaintiff explicitly incorporated as an exhibit, shows Brown inquiring about an injury, the daughter responding about the injury, and a teacher reporting that she observed an injury. It controls against the complaint's allegations to the contrary.

And regardless, the arrest affidavit also invoked Colorado's harassment statute, which punishes a person "if, with intent to harass, annoy, or alarm another person, the person . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact." Colo. Rev. Stat. § 18-9-111(1)(a); *see* ECF No. 5 at 21. Injury is not an element of harassment. *See*

8

*People v. Wade*, 548 P.3d 1164, 1170 (Colo. App. 2024). And the plaintiff provides no law indicating that the evidence Brown gathered did not constitute probable cause of harassment.

Finally, the plaintiff says that any contact with his daughter was lawful parental discipline rather than criminal conduct. *See* ECF No. 29 at 6 (citing Colo. Rev. Stat. § 18-1-703(1)(a)). Lawful parental discipline does constitute an affirmative defense against a charge of child abuse. *See People v. Lybarger*, 700 P.2d 910, 916 (Colo. 1985). But the plaintiff cites no case indicating that the defendants had to consider this affirmative defense in their probable-cause determination and, if so, to what extent they had to do so. Indeed, the "circuits remain divided on whether and when to require officers to consider affirmative defenses at the probable cause stage," *Kendig v. Stolar*, 173 F.4th 466, 477 (3d Cir. 2026); *see, e.g.*, *Sada v. City of Altamonte Springs*, 434 F. App'x 845, 850 (11th Cir. 2011) ("It does not appear . . . that officers are required to consider affirmative defenses in their probable cause calculations."), and the plaintiff cites no controlling law that would put the defendants on notice that their actions were unconstitutional. That lack of clarity is unsurprising: "drawing a line between prohibited child abuse and permissible disciplinary corporal punishment is not an easy task." *Sada*, 434 F. App'x at 850. Without law indicating that the defendants made the wrong call, the plaintiff fails to show that they are not entitled to qualified immunity.

In sum, the plaintiff fails to show that the defendants lacked arguable probable cause to arrest him. They are therefore entitled to qualified immunity.

## II.    Altered-Evidence Claim (Count II)

Count II asserts a due-process violation under the Fourteenth Amendment because investigative body-worn camera footage was incomplete or edited. ECF No. 1 ¶¶ 58–66. That amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property,

without due process of law." U.S. Const., amend. XIV, § 1. Liberally construed, *Hall*, 935 F.2d at 1110, there are two potential ways to interpret the claim.

The first asserts a violation of the plaintiff's "due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer," which requires a plaintiff to "allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021). The plaintiff's complaint does not do so.

It never says, for instance, that any body-worn camera footage was used against him. Indeed, it concedes that the prosecution dismissed the criminal case against him, ECF No. 5 ¶ 48, leaving it no opportunity to use the footage at all. Moreover, the plaintiff never explains how fabrication or alteration of the footage deprived him of liberty. He alleges, for instance, that the footage omitted a deputy sheriff's statements that the plaintiff's daughter's "face was messed up" and that she had "bruises all over her body," *id.* ¶ 31, but it is difficult to imagine how omitting those statements deprived him of liberty. He also complains that the footage omitted "context" surrounding the plaintiff's request, at some point, to take a shower, *id.* ¶ 32, but how showers connect with a deprivation of liberty is left a mystery. By contrast, the principal instrument for depriving the plaintiff of liberty — Brown's Affidavit in Support of Warrantless Arrest — obliquely references the footage only once to indicate that "[v]erbatim statements" of paraphrased quotes in the affidavit could be obtained "by watching my body worn camera footage." ECF No. 5 at 18. Nothing about that statement indicates that altered or edited footage caused a deprivation of liberty.

10

The second interpretation of the claim is "a due process claim against a police officer for withholding or altering evidence" based on what the plaintiff received during criminal discovery. ECF No. 5 ¶ 45. But this claim lies "only if there is a reasonable probability that the police officer's actions prejudiced him during a criminal proceeding." *Mims v. Brown*, No. 25-CV-42-JDP, 2026 WL 1707602, at *1 (W.D. Wis. June 12, 2026) (citing *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir. 2008)). Here, "prosecutors declined to prosecute" the plaintiff and instead dismissed his case, so the plaintiff "cannot show that he was prejudiced by any destruction of favorable evidence." *Id.* Indeed, the plaintiff does not even attempt to do so, treating the allegedly incomplete nature of footage he received as a sort of per se constitutional violation overcoming qualified immunity. ECF No. 29 at 6. It is not. "To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty." *Truman*, 1 F.4th at 1236. The plaintiff does not do so. The defendants are entitled to qualified immunity on this claim, both because the plaintiff failed to allege a constitutional violation and because he cited no case indicating that they violated any clearly established right.

### III.    Procedural Due Process Violations (Count III)

Count III asserts three violations of due process. None of the conduct alleged violated clearly established law.

To begin, the plaintiff cites no case indicating that the Constitution prohibits requiring a waiver of felony extradition before being formally charged. *See* ECF No. 5 ¶ 38. Nor does he cite any case indicating that a five-hour phone delay, *id.* ¶ 36, constitutes such a violation. To the contrary, courts have held that "[t]he right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law." *Harrill v. Blount Cnty.*, 55 F.3d 1123, 1125 (6th Cir. 1995). Thus, "[a] temporary deprivation of

telephone privileges generally does not violate a person's federal constitutional rights." *Oaks v. Rowald*, No. 22-CV-02435-JPG, 2023 WL 7280897, at *2 (S.D. Ill. Nov. 3, 2023). And the plaintiff's allegations of a lack of probable cause for his arrest, ECF No. 5 ¶ 69, are addressed above.

The plaintiff offers little in response, simply arguing that the allegations raise factual issues not suitable for dismissal. ECF No. 29 at 7. But he bears the burden of showing that his alleged facts violated clearly established law, and despite his pro se status, the Court cannot serve as his advocate. *Hall*, 935 F.2d at 1110. His failure even to attempt to carry his burden is fatal to this claim, and the defendants are entitled to qualified immunity for the plaintiff's failure to show that they violated a clearly established right.

## IV.     Conditions of Confinement (Count IV)

Count IV, alleging various Fourteenth Amendment violations relating to the plaintiff's conditions of confinement, suffers from the same infirmity. The plaintiff cites no case holding that a seven-hour detention, *see* ECF No. 5 ¶ 75, violates a clearly established right. Again, to the contrary, courts have held that "a delay of 'more than eight hours'" before release "in many situations would not be a deprivation of" a detainee's federal constitutional "rights." *Golberg v. Hennepin Cnty.*, 417 F.3d 808, 812 (8th Cir. 2005). He cites no law clearly establishing that being placed in a shared cell, ECF No. 5 ¶ 76, violated his constitutional rights. At least with respect to the Eighth Amendment, the Supreme Court has held that it does not. *See Rhodes v. Chapman*, 452 U.S. 337, 348–50 (1981). And his claim of overly tight handcuffs, ECF No. 5 ¶ 78, "requires some actual injury that is not de minimis." *Cortez*, 478 F.3d at 1129. The plaintiff's allegations of "wrist pain and visible indentation," ECF No. 5 ¶ 39, do not meet that standard. Even evidence showing "that the handcuffs led red marks that were visible for days afterward" has been held to be "insufficient, as a matter of law, to support an excessive force

claim if the use of handcuffs is otherwise justified." *Cortez*, 478 F.3d at 1129. In short, nothing in Count IV alleges that the defendants violated a clearly established right.

The one case the plaintiff cites, ECF No. 29 at 7, is not to the contrary. *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015), held generally that an excessive force claim required a showing that officers' use of force was objectively unreasonable. It does not apply with obvious clarity to the plaintiff's claim, *see Ellis*, 147 F.4th at 1229, and cases dealing with more factually analogous scenarios have held that the conduct in question passed muster. The defendants are entitled to qualified immunity on this claim as well.

## V.    *Monell* Liability (Count V)

The plaintiff's bid to sue Archuleta County also falls short. Although 42 U.S.C. § 1983 refers literally to a "person," "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. Thus, "[t]o state a claim against a municipal entity, a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (citing *Crowson v. Wash. Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020)). The plaintiff does not do so.

For one thing, the complaint's attempt to hold Archuleta County liable is almost entirely derivative of its allegations against the individual defendants. The complaint simply names topics relating to Counts 1 to 4 and asserts in conclusory fashion that a lack of "training and supervision" in those areas led to constitutional violations. *See* ECF No. 5 ¶¶ 83, 86. That will

13

not do. As described above, the complaint is lacking in facts showing constitutional violations in these areas. Alleging a failure to train or supervise an individual who did not commit a constitutional violation does not state a claim against the local government. *See Rowell v. Bd. of Cnty. Comm'rs*, 978 F.3d 1165, 1175 (10th Cir. 2020).

For another, the complaint is devoid of facts causally connecting any lack of training with any constitutional violation. Instead, it relies on a blanket conclusion that a failure to train and supervise was "a moving force behind the constitutional violations suffered by Plaintiff." ECF No. 5 ¶ 86. Stating a *Monell* claim, though, requires more than conclusions: specific factual allegations must show both the existence of the policy and the policy's causation of the constitutional violation. *See Lucas*, 58 F.4th at 1145. The plaintiff's complaint falls short of that bar and, as such, it must be dismissed.

## VI.    State-Law Claims (Count VI)

Given the recommended dismissal of all federal claims, the Court should and does decline to exercise supplemental jurisdiction over any remaining state-law claims in this case. *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

## VII.    Dismissal of Federal Claims with Prejudice

Dismissal of a case is a harsh remedy, and a pro se litigant's pleadings are to be construed liberally. As a general rule, therefore, a court may give a pro se litigant the opportunity to amend the complaint to cure a pleading defect. *Hall*, 935 F.2d at 1109–10; *Reynolds v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, a court may dismiss a complaint without an opportunity to amend if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). Here, the Court's recommendation to dismiss the plaintiff's claims is not due to a pleading deficiency.

14

Rather, as a matter of law, the defendants are entitled to qualified immunity for lack of clearly established law. No amendment would remedy that. Accordingly, the plaintiff's federal claims should be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS**[1] that the defendants' Motion to Dismiss, ECF No. 20, be **GRANTED** and that the Counts I to V of the complaint be **DISMISSED with prejudice**. The Court further recommends that Count VI be **DISMISSED without prejudice**. *See N.M. Trappers Ass'n v. Torrez*, 178 F.4th 561, 571 (10th Cir. 2026).

Respectfully submitted this 30th day of July, 2026, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>